*Western District*

## No. 150

# RITA JERMYN
### v.
# WORCESTER BUS CO.

Argued: Aug. 20, 1975. Decided: April 7, 1976.

Case tried to *McCooey, J.,* in the Central District Court of Worcester. Number: 70-T-321.

Present: Gould, P.J.; Cimini, Walsh, J.J.

**Walsh, J.** This is an action of tort to recover damages for personal injuries sustained by the plaintiff while she was a passenger on a bus owned and operated by the defendant. The trial justice found for the plaintiff.

The defendant filed two requests for rulings. Both were directed to the issue of the sufficiency of the evidence to warrant a finding for the plaintiff. Specifically, whether a finding of negligence on the part of the defendant was warranted as plaintiff's due care was neither questioned nor argued.

After boarding defendant's bus, the plaintiff and an acquaintance, Mary, sat on a double seat in the mid-section of the bus with the plaintiff nearest the aisle. Another acquaintance, Anna, who also got on at the same time, remained standing in the aisle holding on to a handle on top of the seat which was in front of the plaintiff and Mary. The plaintiff and Anna engaged in conversation. The bus was proceeding to the next stop on a street which had no traffic controls or stop signs. As the bus started down a moderately sharp decline attaining an estimated speed of between thirty and forty miles per hour (as estimated by the plaintiff by looking out the window across the aisle and to her right and observing various objects pass by the window), when the plaintiff "heard a loud screeching of brakes, the bus kept moving and the bus came to a dead sudden stop".

The plaintiff's head was raised and tilted slightly to the left at the time in the course of her conversation with Anna. She was then thrown forward and her left hand, particularly her left thumb, struck the back of the seat in front of her. Both her knees, but principally her left knee, also contacted the seat in front of her and her head snapped forward and then backwards. Immediately thereafter, the plaintiff observed the car ahead of the bus but paid no particular attention to it and didn't actually know whether the car was moving or not.

Anna's body whirled forward and she banged her right arm on something. Her best memory was that it was the seat across the aisle. She felt shaken up, but otherwise all right, resumed her erect or standing position, looked to the area of the street ahead of the bus and observed the car proceeding in the same direction as the bus. The plaintiff observed that Mary, whom she described as an old lady, was crying.

The plaintiff and her two acquaintances said nothing to the operator about the incident nor did any of the three or four other passengers. The first he knew of it was when he was notified by his employer, the defendant, to report to its claim office a couple of weeks later.

After the trial justice made certain findings pertaining to injuries, medical treatment and other damages, he made certain specific factual findings.

"1. I find that said subject sudden stop of said bus was caused solely and exclusively by the conduct of said bus driver.

2. I find that said subject sudden stop of said bus was not caused by any traffic emergency.

3. I find upon the evidence and the reasonable inferences deducible therefrom that said subject stop was attendant with and accompanied by such suddenness and violence that it constituted an act of negligence by said defendant's bus operator acting within the scope and purview of his employment.

4. I find that said so-described negligent and unwarranted stop by said defendant's bus operator was the sole, direct, proximate cause of said plaintiff's injuries, namely and essentially, an acute low back strain and strain of her left shoulder plus minor tenderness of the left hand, particularly, her left thumb, plus minor tenderness of her knees, particularly the left knee.

5. I find that said plaintiff at all times material hereto was in the exercise of due care and was not contributorily negligent in any way or in any manner.

6. I find that said plaintiff's injuries so incurred which were causally related to said subject negligent stopping incident of April 12, 1966 had a duration—both total and partial—of approximately three months and award damages therefor in the sum of fifteen hundred ($1500.00) dollars."

The defendant filed its two requests for rulings asking the judge to rule that the evidence in the case (1) does not warrant a finding in favor of the plaintiff and (2) does not warrant a finding of negligence on the part of the defendant or any person for whose conduct the defendant was legally responsible.

Both requests were denied as being inapplicable to and inconsistent with the court's factual findings and the applicable law.

■■■ Defendant's requests for rulings in this case have the same effect as a motion for a directed verdict in a jury trial. A party in a case in the District Courts may raise the question that as a matter of law a finding may not properly be made in favor of his opponent, not by moving for a directed verdict as in a jury case, but by filing a proper request for ruling. *Forbes v. Gordon & Gerber, Inc.,* 298 Mass. 91, 94 (1937). *Boston Note Brokerage Co., Inc. v. Pilgrim Trust Co.,* 318 Mass. 224, 228 (1945). Such requests as filed by the defendant that the evidence is insufficient to warrant a finding for the plaintiff must be denied if upon the evidence a finding for plaintiff is permissible. *Anapolle v. Carver,* 327 Mass. 344, 346 (1951).*

■■■ The trial justice made certain findings of fact. When an action at law is tried without a jury, the

---

* See: **C. v. Hull,** 296 Mass. 327, 328-329, where motion for a general finding included both law and fact. (Lummus, J.).

justice occupies a dual position. Not only must he lay down correctly the guiding principle of law, but he is also compelled to determine what the facts are.

We cannot review the justice's findings of fact as such. These facts must stand if warranted in law upon any reasonably possible view of the evidence. The only question for review upon the denial of requests as filed in this case is whether upon the evidence with all rational inferences which might be drawn therefrom a finding for the plaintiff can be sustained. *Heil v. McCann,* 360 Mass. 507, 511 (1971); *Casey v. Gallagher,* 326 Mass. 746, 748-749 (1951).

The issues in tort law with respect to jerks, jolts, sudden stops and the like of common carriers have been broadly litigated in this Commonwealth. As settled by a long line of decisions, the burden of the plaintiff in a case such as we have here is two fold. First, in the absence of direct evidence of negligence, she must show that the jolt or jerk arising from the operation of the vehicle was far in excess of that ordinarily to be expected in order to lay a foundation for a reasonable inference of negligence. As a second requirement, she must prove that the jolt or jerk was not necessitated by some traffic emergency. *Mathieu v. Springfield Street Railway,* 328 Mass. 13, 14 (1951); *Cuddyer v. Boston Elevated Railway,* 314 Mass. 680, 685 (1943).

To establish that the jolt or lurch was of an extraordinary or unusual nature mere adjectives, no matter how vivid or descriptive epithets, will not suffice. Evidence of physical facts must be presented to demonstrate the force of the jerk or jolt. *Convery v. Eastern Mass. St. Ry.,* 252 Mass. 418, 421 (1925); *Sullivan v. Boston Elev. Ry.,* 224 Mass. 405, 407 (1916). So where a plaintiff never mentioned any observation of possible obstacles in the path of a street car and testified only that it came "to a stop with a jerk, real fast", it was held not to be enough to warrant an inference of negligence. *Berger v. Massachusetts Bay Transpor-*

*tation Authority,* 355 Mass. 695, 697 (1969). In *Convery v. Eastern Mass. St. Ry.,* 252 Mass. 418, 421, the testimony of the plaintiff that the car started with "a terrible jump" and that she "got the sensation that the floor of the car was going to be torn from under . . . (her) and . . . (she) was going through to the street" standing alone was not evidence of negligence. However, in *Nolan v. Newton St. Ry.,* 206 Mass. 384, 388 (1910), where the plaintiff testified that the car started up with such a velocity that it appeared that it was "going to stand right up" was held to be an expression of more than a mere expletive. This along with some expert testimony on the improper operation of the car was held to be sufficient.

Apart from mere words, physical factors which may be considered as evidence from which force could be inferred are (1) the distance which the plaintiff was thrown and (2) the force of the fall which could be inferred from the severity of the injury. *Cantara v. Mass. Bay Transportation Authority,* Mass. App. Ct. 323, NE 226, 759 (1975).[1] In the latter case it could have been found that the plaintiff was thrown a distance of six feet. Further, that the injury sustained was a fracture of the femur and of a type which a medical expert testified requires "considerable force to occur".

The governing principles are not difficult in these cases. The difficulty comes in applying them to a given state of facts. The question is one of degree in each case and it is impossible to lay down any rule of general application. *Work v. Boston Elev. Ry.,* 207 Mass. 447, 448 (1911); *Mathieu v. Spfld. St. Ry., supra.*

We are of the opinion in the present case that the facts do not warrant a finding that there was a jolt of sufficient force to constitute negligence on the

---

[1] Mass. App. Ct. Adv. Sh. (1975) 267, 269. 323 NE 2d 75.

part of the defendant. While the injuries might have been disabling and somewhat painful, they do not seem to be of a type whose existence without more evidence demonstrate a severe jolt. Neither does the contact the plaintiff made with the seat in front seem unusual. The effect of the stop on plaintiff's friend, Anna, who was standing in the aisle, does not assist plaintiff's cause. *Bray v. Boston Elev. Railway*, 303 Mass. 379, 380-381 (1939). Nor does the fact that none of the passengers on the bus thought enough of the incident to complain or even mention it to the operator and he had no independent memory of it. The speed of the bus as estimated by the plaintiff was not shown to be excessive or unreasonable under the circumstances nor specifically found so by the trial justice.

Had the plaintiff been able to show an extraordinary or unusual jolt, she still had the burden of showing that it was not necessitated by a traffic emergency. This rule was suggested in *Timms v. Old Colony St. Ry.*, 183 Mass. 193, 194 (1903). In that case the plaintiff was a boy who was pitched off the back platform of a street car. After noting that the evidence of a little jerk and sudden slackening was not of an unusual nature the court stated: "As to the apparent sudden stopping, there is nothing to show it was not caused by some obstacle appearing suddenly in front, such as a horse and wagon or a person on foot attempting to cross the track a short distance ahead." In *Cuddyer v. Boston Elevated Railway*, 314 Mass. 680, 685, the suggestion that the plaintiff has the burden of proving the absence of a traffic emergency rises to the level of a requirement. It was held in that case that where a carrier was on a public street and not on a private location or reservation, subject to obstruction by vehicles and pedestrians and where there is no evidence the stop was not caused by such an obstruction, a finding for plaintiff is not warranted.

Because the rule probably grew out of the necessity of recognizing the problems of highway traffic hazards, an exception has been recognized. When a carrier is on its own reservation such as an elevated car travelling on its own level removed from other traffic, *Gray v. Boston Elev. Ry.*, 251 Mass. 167, 169 (1925), or while in the confines of the lower level of its own station, *Whippen v. Massachusetts Bay Transportation Authority*, 354 Mass. 99, 100-101 (1968), there is no reason for the rule and it is not applicable. Another exception to the rule is when the vehicle is stopping to allow passengers to alight. *Black v. Boston Elev. Ry.*, 206 Mass. 80, 81-82 (1910).

Since neither exception is applicable here and assuming plaintiff had shown a jolt of unusual force, the issue then to be determined in this case is whether the evidence warranted the trial justice's specific finding that the stop was not caused by any traffic emergency. We do not think so.

There is no evidence of traffic conditions before the incident. The only evidence reported related to lack of traffic controls, topography and speed of the bus. Plaintiff and her companion both testified that immediately following the jolt, they saw a car just ahead of the bus. The plaintiff not paying particular attention didn't know if it was moving or not and her companion observed it proceeding in the same direction as the bus. There was no evidence to explain the manner in which the car arrived in front of the bus immediately after the stop. Further, there was no evidence from which an inference could reasonably be drawn that this car did not create a traffic emergency. It could well be argued that a reasonable inference might be that the presence of a vehicle in front of the bus immediately after the stop was that the stop was necessitated by a traffic emergency. Compare *Weiner v. Boston Elevated Ry. Co.*, 262 Mass. 539, 541-542 (1928) in which the plaintiff prevailed where she testified that as she fell following a violent

stop she looked through the window ahead and saw nothing to cause such a stop.

■ Some confusion has no doubt arisen in this type of case and again it evolves upon whether the vehicle is on its private location or on the public way. In the former, there is a duty of explanation which the defendant must assume if the incident is one such as in the ordinary course of things does not happen if those who have the management of the vehicle use proper care. *Gray v. Boston Elevated Ry., supra.* If the latter, the applicable law is that it is clearly incumbent upon the plaintiff to prove that the stop was not caused by a traffic emergency, or that the traffic emergency was caused by the bus driver. *Gelineau v. Massachusetts Bay Transportation Authority,* Mass. App. Ct. (1973).[2]

Prejudicial error having been found in the denial of defendant's requests for rulings, the finding for the plaintiff is vacated and judgment is ordered for the defendant.

---

[2] Mass. App. Ct. Adv. Sh. (1973) 293. 295 NE 2d 178.